UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAMONA M. BLANCAS, | ) | 1:09-cv-1026 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 2) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1949, has a high-school education, and previously worked as a teacher's aide. (Administrative Record ("AR") 1190-91, 1193.) Plaintiff stopped working after injuring her back when a student attacked her in 2000. (AR 544.)

On August 18, 2005, Plaintiff filed an application for DIB, alleging disability beginning on July 11, 2003, due to fibromyalgia, carpal tunnel syndrome, arthritis, high blood pressure, back pain, and pain in her left elbow, right arm, and legs. (AR 107, 147.)

On December 15, 2005, a state agency consultant assessed Plaintiff's physical residual functional capacity ("RFC"). (AR 562-69.) The consultant opined that Plaintiff could (1) occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities. (AR 563.) Plaintiff had no postural, visual, communicative, or environmental limitations, but her ability to handle objects was limited. (AR 564-66.)

On January 10, 2006, Glenn Ikawa, M.D., a state agency psychiatrist, completed a psychiatric review technique form, finding Plaintiff's mental impairment not to be severe. (AR 561.) Another state agency psychiatrist, Archimedes Garcia, M.D., affirmed Dr. Ikawa's finding on April 18, 2006. (AR 561.)

On March 13, 2006, Greg Hirokawa, Ph.D., performed a consultative psychiatric evaluation of Plaintiff. (AR 544-48.) Dr. Hirokawa diagnosed Plaintiff with mild post-traumatic stress disorder and panic disorder without agoraphobia. (AR 547.) Dr. Hirokawa further opined that Plaintiff's ability to perform various work functions was fair. (AR 548.)

On April 13, 2006, Sadda Reddy, M.D., a state agency physician, assessed Plaintiff's physical RFC. (AR 551-58.) Dr. Reddy opined that Plaintiff could (1) occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited

pushing and/or pulling with the left arm. (AR 552.) Plaintiff had no postural, visual, communicative, or environmental limitations, but was limited to no forceful gripping or grasping with her left hand. (AR 553-55.)

On July 27, 2007, Abbas Mehdi, M.D., a board-eligible neurologist, performed a consultative examination, which included physical and neurological examinations and a review of Plaintiff's medical records. (AR 602-05.) Dr. Mehdi diagnosed Plaintiff as suffering from "[c]hronic pain syndrome in multiple areas of the body with neck pain, back pain, leg pain and carpal tunnel syndrome," as well as from psychiatric disorders. (AR 605.) Dr. Mehdi also opined as follows:

> From a physical standpoint, [Plaintiff] did not show even minimal objective findings on examination. Her range of motions were [sic] fine. Joints seemed healthy. No muscle atrophy or weakness. No sensory loss. Reflexes are symmetrical. Gait normal. It is possible that [Plaintiff] may be suffering from pain secondary to a reactive depression or from an underlying musculoskeletal condition but there is no objective evidence to support any significant disease.
>
> From a functional standpoint, [Plaintiff] can lift and carry 100 pounds occasionally and 50 pounds frequently. [Plaintiff] can stand and walk for six hours in an eight hour work day with normal breaks. [Plaintiff] can sit without restriction. No exertional limitations.

(AR 605.)

On that same day, Dr. Mehdi also completed a medical source statement regarding the doctor's opinion about Plaintiff's physical ability to do work-related activities. (AR 606-12.) Dr. Mehdi opined that Plaintiff could frequently reach, handle, finger, feel, push, and pull, as well as operate foot controls with both feet. (AR 608.) Plaintiff could also frequently climb, balance, stoop, kneel, crouch, and crawl. (AR 609.) Finally, Dr. Mehdi opined that Plaintiff could (1) perform activities like shopping; (2) travel without a companion for assistance; (3) ambulate without using a wheelchair, walker, or two canes; (4) walk a block at a reasonable pace on rough or uneven surfaces; (5) use standard public transportation; (6) climb a few steps at a reasonable pace with the use of a single hand rail; (7) prepare a simple meal and feed herself; (8) care for personal hygiene; and (9) sort, handle, and use files. (AR 611.)

On August 7, 2007, Charles Potter, M.D., an orthopedic surgeon, completed a report as an agreed medical examiner in Plaintiff's underlying workers' compensation case. (AR 765-78.) Dr. Potter opined that Plaintiff's left arm had lost 50% of its ability to perform fine repetitive motion such as typing. (AR 776-77.) Plaintiff was precluded from using her right shoulder and arm to perform very heavy lifting with repetitive, forceful pushing and pulling. (AR 777.) Wth respect to Plaintiff's thoracolumbar spine, Plaintiff was precluded from heavy lifting and prolonged sitting or weight-bearing. (AR 777.)

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 87-99.) On February 22, 2008, ALJ Michael Haubner held a hearing where Plaintiff testified that she lived with her retired husband. (AR 1194-95.) Plaintiff drove three to four times a week, cooked twice a day, and was able to care for her own personal needs, such as brushing her teeth and bathing. (AR 1196-97.) Plaintiff washed dishes once daily, shopped three times a month, and attended church twice a week. (AR 1197-99.) Plaintiff also changed her bed sheets, washed laundry, dusted her furniture, and mopped her floor once a week. (AR 1199-1200.) Plaintiff swept her floor at home at least every other day. (AR 1200.)

Although Plaintiff has no hobbies, she watched television daily for four to six hours and read the newspaper weekly for an hour. (AR 1200-01.) Plaintiff spoke daily on the telephone for about five minutes, and she visited her family and friends every two weeks. (AR 1201.) Plaintiff also exercised, doing at least ten sit-ups, and walked for two blocks twice a week. (AR 1202.)

According to Plaintiff, she can lift and carry five to ten pounds. (AR 1202.) Plaintiff is able to sit for about 20 minutes at a time and to stand for ten to 15 minutes at a time. (AR 1202-03.) Because of pain or fatigue, Plaintiff has to lie down for 25 to 45 minutes during an eight-hour day, and has difficulty focusing and paying attention. (AR 1203-04.)

A vocational expert ("VE") testified that, according to the Dictionary of Occupational Titles (the "DOT"), Plaintiff's past work as a teacher's aide was light.[2] (AR 1207-08.) A hypothetical person of the same age, education, and work experience as Plaintiff could perform Plaintiff's past relevant work if that person had a fair ability to perform various work functions as outlined in Plaintiff's psychiatric evaluation by Dr. Hirokawa. (AR 548, 1209-10.) Such a person with Plaintiff's physical RFC as assessed by Dr. Reddy could also perform Plaintiff's past work. (AR 551-58, 1210-11.)

The VE further testified that such a hypothetical person with Plaintiff's physical RFC as assessed by a state agency consultant in December 2005 could also perform Plaintiff's past work. (AR 562-69, 1212.) This hypothetical person could not perform any work, however, if that person had Plaintiff's self-described limitations. (AR 1217-18.)

On May 19, 2008, the ALJ issued a decision finding Plaintiff not disabled since July 11, 2003. (AR 10-26.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of July 11, 2003; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform her past relevant work as a teacher's aide. Alternatively, Plaintiff could perform other jobs that exist in significant numbers in the national economy. (AR 15-26.)

Plaintiff sought review of this decision before the Appeals Council. On April 13, 2009, the Appeals Council denied review. (AR 6-9.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

---

[2] The Social Security Administration has taken administrative notice of the DOT, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see also* 20 C.F.R. § 404.1566(d)(1). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

On June 10, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ erred in giving greater weight to Dr. Mehdi's opinion than to Dr. Potter's opinion and in discounting her credibility.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are

demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work.[3] *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**DISCUSSION**

**A.     The ALJ's Weighing of Medical Opinions**

The ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to lift and carry 100 pounds occasionally and 50 pounds frequently. She is able to stand, walk, and sit for two hours each at a time and six hours each in an eight-hour workday. She is able to reach, handle, finger, and feel frequently with her bilateral upper extremities. She is able to operate foot controls, and climb stairs, ramps, and ladders frequently. She is able to balance, stoop, kneel, crouch, and crawl frequently. She is able to perform all activities of daily living, walk without an assistive device, use public transportation, and walk on even surfaces. She is able to sort, handle, and use paper files.

(AR 17-18.) The ALJ found that these limitations were consistent with Dr. Mehdi's opinion, to which the ALJ gave "very great weight" because the opinion was consistent with the objective evidence, including the treatment records and Dr. Mehdi's findings on physical examination. (AR 18.) The ALJ further found that Dr. Mehdi's status as a board-eligible specialist enhanced his reliability. (AR 18.)

In contrast, the ALJ gave "some weight" to Dr. Potter's opinion regarding Plaintiff's carpal tunnel syndrome because the preclusion from very heavy lifting was consistent with Plaintiff's RFC. (AR 19.) The ALJ gave "little weight" to Dr. Potter's manipulative restrictions because Plaintiff's condition improved after carpal tunnel surgery. (AR 19.) The ALJ also gave "very little weight " to Dr. Potter's spinal restrictions because no objective evidence, such as X-rays, CT scans, or MRIs, confirmed such limitations. (AR 19.) Plaintiff argues that the ALJ erred in giving greater weight to Dr. Mehdi's opinion than to Dr. Potter's opinion.

**1.     Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the

claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**2.    Analysis**

Plaintiff maintains that the ALJ should have given greater weight to Dr. Potter's opinion than to Dr. Mehdi's opinion because Dr. Potter is a board-certified physician who was retained to render a neutral opinion as an agreed medical examiner in Plaintiff's workers' compensation case. Because Dr. Potter's opinion conflicted with Dr. Mehdi's opinion, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting portions of Dr. Potter's opinion.

The ALJ noted the lack of X-rays, CT scans, or MRIs confirming Plaintiff's spinal restrictions set forth by Dr. Potter. (AR 19.) The lack of objective medical evidence was, therefore, a specific, legitimate reason for the ALJ to discount Dr. Potter's opinion regarding some of Plaintiff's limitations. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Furthermore, the ALJ found that Dr. Mehdi's opinion was consistent with the objective evidence, including Plaintiff's treatment records and Dr. Mehdi's findings after physically examining Plaintiff. Substantial evidence, therefore, supports the "very great weight" given by the ALJ to Dr. Mehdi's opinion. *See id.* (finding that examining physician's opinion alone constituted substantial evidence supporting ALJ's findings regarding claimant's physical impairment and exertional

limitations because opinion rested on physician's own independent examination of claimant). Accordingly, Dr. Mehdi's opinion serves as an additional specific and legitimate reason to reject Dr. Potter's opinion. *See id.* (finding that contrary opinions of examining and non-examining physicians served as additional specific and legitimate reasons for rejecting unsupported opinions of claimant's treating and examining physicians).

Plaintiff asserts that the ALJ erred in finding that Dr. Mehdi's status as a board-eligible neurologist enhanced his reliability, in turn entitling Dr. Mehdi's opinion to greater weight than the opinion of Dr. Potter, a board-certified orthopedic surgeon. Plaintiff, however, points to no regulation or case law that supports her contention. Even assuming that the ALJ erred in affording greater weight to Dr. Mehdi's opinion on this basis, the "error, if any indeed existed, was inconsequential to the ultimate nondisability determination," in light of the specific, legitimate reasons stated above. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

In sum, the ALJ gave specific and legitimate reasons, supported by the record, for rejecting Dr. Potter's opinion. Accordingly, the ALJ's findings are supported by substantial evidence and are legally correct.

**B.     The ALJ's Consideration of Plaintiff's Credibility**

The ALJ found that the records showed (1) a lack of objective evidence to support Plaintiff's allegations of disabling pain and (2) many inconsistencies in the record and testimony. (AR 24.) Therefore, the ALJ gave little weight to Plaintiff's subjective complaints. Plaintiff maintains that the ALJ erred in doing so.

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the

severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (*quoting Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2.    Analysis**

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. (AR 22.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

First, the ALJ found that Plaintiff "performs a wide range of activities of daily living that are inconsistent with an individual who suffer[s] from disabling pain." (AR 22.)

> For example, she testified that she drives three to four times a week, tends to all her own personal care needs, cooks meals twice a day, cleans up dishes and the kitchen once a day, and cleans bathrooms once or twice a week. [Plaintiff] stated she shops for food three times a month, changes sheets once a week, makes the bed daily, and does laundry once a week. She stated she dusts once a week, sweeps and vacuums every other day, and mops the floor once a week. [Plaintiff] testified that she reads

11

>one hour a week, talks on the phone for five minutes a day, visits family or friends outside her home every two weeks, walks twice a week for two blocks each time, and does ten sit-ups a day.

(AR 22-23.) Because Plaintiff shopped, cooked, cleaned, and cared for herself without apparent limitations, the ALJ found that these activities were not consistent with intractable pain or with an inability to use her hands for gross or fine manipulation. (AR 23.)

The ALJ appropriately considered Plaintiff's activities of daily living in determining that she was not entirely credible. The mere fact of a claimant's carrying on certain daily activities does not necessarily detract from credibility as to overall disability. However, a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills. Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Thomas*, 278 F.3d at 959; *Morgan*, 169 F.3d at 600; *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).

In *Stubbs-Danielson*, for example, the court found that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband in managing finances. 539 F.3d at 1175. These activities tended to suggest that the claimant may have still been capable of performing the basic demands of unskilled work on a sustained basis. *Id.*

Here, the ALJ appropriately considered Plaintiff's admitted activities of daily living, which included housekeeping, self-care, shopping, and cooking, comparable to the activities in the cases cited above. The ALJ found that Plaintiff's statements that, *inter alia*, she shopped three times a month, drove three to four times a week, and cleaned her home were inconsistent with her claimed inability to work. Plaintiff's activities of daily living were, therefore, clear and convincing evidence to discount her credibility.

Second, in discounting Plaintiff's credibility, the ALJ found inconsistencies in the record. Inconsistent statements are matters appropriately considered in evaluating a claimant's subjective complaints. In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, internal contradictions in the testimony, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas*, 278 F.3d at 958-59. The ALJ may consider whether the Plaintiff's testimony is believable or not. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

In this case, the ALJ noted that Plaintiff "exaggerated significantly" at the hearing. "For example, she stated she could only sit twenty minutes at a time, yet sat throughout the entire hearing of around 40 minutes." (AR 24.) Plaintiff "also testified she could only concentrate ten minutes maximum, then must rest mentally for another ten minutes, yet she paid attention and responded appropriately throughout the whole hearing." (AR 24.) Thus, Plaintiff's demeanor at the hearing was also a clear and convincing reason to discount her testimony. *See Thomas*, 278 F.3d at 960 (determining that ALJ's consideration of claimant's demeanor at hearing where "she seemed to engage in considerable histrionic exaggeration" was clear and convincing reason to reject claimant's testimony); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) ("The inclusion of the ALJ's personal observations does not render the decision improper.").

13

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. *Cf. Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Ramona M. Blancas.

IT IS SO ORDERED.

**Dated:**   **September 15, 2010**            /s/ Sheila K. Oberto
                                                           UNITED STATES MAGISTRATE JUDGE